RCH:ADG/RMS
F. #2024R00516

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

DAO YIN,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT

(18 U.S.C. § 1343)

Case No. 25-mj-00208

EASTERN DISTRICT OF NEW YORK, SS:

        WILLIAM FATH, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

        1.     In or about and between May 2023 and June 2024, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DAO YIN, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the New York State Public Campaign Finance Board ("PCFB") and to obtain money or property from the Office of the New York State Comptroller by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communications in interstate commerce, one or more writings, signs, signals, pictures, and sounds, to wit: email communications and electronic transmissions submitted by YIN to the PCFB.

        (Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

2.   I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since December 2020.  Before becoming a Special Agent, I worked as an investigative auditor for the State of Louisiana.  I have experience conducting investigations into public corruption and fraud schemes, including those involving bank fraud, mail fraud, wire fraud and identity theft.  I am currently assigned to a squad that focuses on white-collar crimes, including public corruption.  In that capacity, I have been involved in the investigation of numerous cases relating to various types of financial fraud, including mail fraud, wire fraud and bank fraud.  My current duties involve investigating various violations of the criminal laws of the United States; making arrests; collecting and reviewing evidence in criminal investigations; and performing other duties imposed by law.  I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including bank records and telephone records; interviews with relevant individuals and from reports of other law enforcement officers involved in the investigation.

I.   Relevant Individuals and Entities

3.   The defendant DAO YIN is a resident of Queens, New York.  YIN, who is originally from the People's Republic of China, became a United States citizen in approximately 2012.  During the 2024 election cycle, YIN campaigned as a candidate for the New York State

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

Unless otherwise indicated, all statements described in this Complaint are in sum and substance and/or in part.

Assembly (the "Assembly") to represent Assembly District 40, which covered parts of Queens, New York. On or about June 25, 2024, YIN lost the primary election to represent a national political party in the general election that was later held on or about November 5, 2024. According to the New York City Board of Elections, YIN received approximately 185 votes, representing approximately 5.9 percent of the votes cast in the primary election. YIN previously ran unsuccessful campaigns to be the nominee for a national political party for election to the positions of Queens Borough President in 2020 and New York City Council Member in 2021.

        4.        The PCFB was a unit within the New York State Board of Elections that oversaw and administered the New York State Public Campaign Finance Program, which provided candidates running for statewide or state legislative office the ability to qualify for and receive public matching funds based on small donations from residents in applicable districts. The New York State Public Campaign Finance Program (the "Public Campaign Finance Program") was designed to foster participation in the democratic process.

        5.        Dao Yin for New York 2024 (the "Committee") was the defendant DAO YIN's campaign committee, which was registered with the PCFB to receive funds through the Public Campaign Finance Program. YIN served as the treasurer of the Committee.

II.    <u>New York State Public Campaign Finance Program</u>

        6.        To participate in the Public Campaign Finance Program during the 2024 election cycle, a candidate was required, among other things, to register an authorized committee with the PCFB, be in a covered election for a covered office, meet threshold requirements for the number of matchable contributions received and total monetary contributions received, and to adhere to all other program requirements such as making periodic disclosures to the PCFB and following contribution limits. Contributions between $5 and $250 were generally eligible for

public matching funds provided they met certain criteria. For an Assembly race, the candidate generally must have raised a minimum of $6,000 in matchable contributions and have a minimum of 75 matchable contributors who resided within the applicable district to qualify for public matching funds. Additionally, to participate in the program, the candidate and the treasurer for the authorized committee were required to take mandatory training that covered the PCFB's rules and requirements and the process of claiming contributions and submitting disclosure statements, among other areas.

7. For cash contributions to qualify for matching funds, the candidate's authorized committee was required to submit contribution cards to the PCFB that listed, among other information, each contributor's name, residential address and date of contribution. The contribution card also had to be signed by the contributor. An image of a blank contribution card is depicted below.

**NYS Public Campaign Finance Board**
**Contribution Card**

This card must be completed in full, with an original signature from the contributor. Please use black ink and print clearly.

Committee Name: _____
Contribution Amount: $_____ Date of Contribution: _____
Contribution Type:  ☐ Cash     ☐ Check     ☐ Credit Card     ☐ Money Order
Contributor Name: _____
Residential Address (No P.O. Box): _____
City or Town: _____ State: _____ Zip Code: _____
Telephone: _____ Email Address: _____
Employer: _____ Occupation: _____
Employer Address: _____
City or Town: _____ State: _____ Zip Code: _____

I certify that this contribution is being made from my own personal funds, is not being reimbursed in any manner, and is not being made as a loan to the committee.

_____          _____
Signature of Contributor                                                      Date

8. The PCFB used a tiered formula for determining the amount of matching funds to be awarded for particular contributions. Pursuant to that formula, the amount of matching funds could in some circumstances exceed the original contribution amount. For example, the maximum amount of matching funds that could be received for a $250 contribution was $2,300. In 2024, the maximum total amount that a candidate for an Assembly race could receive in matching funds was $175,000 for a primary election and $175,000 for a general election.

9. When the PCFB determined that a candidate qualified for public matching funds, the funds were disbursed by the Office of the New York State Comptroller to the candidate's authorized committee.

III.   The Defendant's Fraudulent Scheme

10. The defendant DAO YIN fraudulently obtained public matching funds for the Committee from the Office of the New York State Comptroller by making material misrepresentations to the PCFB. Specifically, to meet the requirements to qualify for public matching funds, YIN submitted to the PCFB numerous fraudulent contribution cards that listed the names and purported to bear the signatures of individuals he falsely claimed to have donated to the Committee. PCFB records reveal that YIN submitted to the PCFB over 200 contribution cards between approximately June 2023 and March 2024 to claim approximately $162,800 in matching funds. Many of those contribution cards were fraudulent.

11. According to records obtained during the investigation, and individuals familiar with the defendant DAO YIN's 2024 campaign, the identities of whom are known to the affiant, YIN was responsible for communicating with the PCFB and for managing the campaign's finances. According to PCFB records, YIN registered the Committee with the PCFB

and identified himself on the paperwork submitted to the PCFB as both the candidate and the treasurer for the Committee. He also initialed and signed a candidate certification form, acknowledging that willfully furnishing false statements can constitute a crime under New York law, and that, "I understand that financial control over the campaign is ultimately my responsibility." YIN listed a phone number (the "YIN Phone"),[2] as well as an email address, hosted by Yahoo, with his name (the "YIN Email Account").[3] PCFB records also reveal that YIN completed mandatory trainings for participation in the Public Campaign Finance Program, both as a candidate and as treasurer of the Committee. Those training programs included information pertaining to the PCFB, the Public Campaign Finance Program, how to properly collect and report contributions for matching funds and ensure that contributions are in the true name of the contributor. Email communications provided by the PCFB also indicate that YIN was the only person to have communicated with the PCFB on behalf of the Committee. A review of such email communications indicates that YIN personally submitted the necessary documentation to the PCFB and had an active role in managing the Committee's finances.

12. The defendant DAO YIN submitted contribution cards, many of them fraudulent, to the PCFB in connection with the 2024 campaign. Thereafter, the PCFB informed YIN that the Committee needed to supply additional information for the purported contributors, namely their email addresses or telephone numbers in order to receive matching funds. The PCFB further advised YIN that, to address these deficiencies, YIN could send letters ("Good Faith Letters") to the purported contributors, requesting the missing information. In early April

---

[2] Telephone provider records for the YIN Phone show that it was subscribed to "Dao Yin" and list YIN's known residential address.

[3] Email provider records show that the YIN Email Account was subscribed to "Dao Yin" and list the YIN Phone as the phone number for the account subscriber.

2024, YIN, in furtherance of his fraudulent scheme, provided the PCFB with copies of Good Faith Letters he claimed to have sent to the purported contributors requesting the missing information. As described further below, some of the purported contributors YIN provided to the PCFB did not recall receiving Good Faith Letters from the Committee. The PCFB subsequently accepted YIN's representation that he had mailed Good Faith Letters to the purported contributors and determined that its request for additional information was satisfied.

13. As a result, the PCFB subsequently disbursed matching funds to the Committee. Specifically, on or about June 3, 2024, the Committee's bank account received a deposit of public matching funds from the Office of the New York State Comptroller of approximately $162,800. The defendant DAO YIN was the sole signatory on the Committee's bank account.

14. During the course of this investigation, the FBI interviewed numerous persons whom the defendant DAO YIN had included on false contribution cards that he submitted to the PCFB and to whom YIN purportedly mailed a Good Faith Letter to collect missing identifying information. These persons reported to the FBI that they never contributed to YIN's campaign, never signed a contribution card for his campaign and, in some cases, never heard of YIN. Several of the contribution cards incorrectly listed the purported contributor's last name before the purported contributor's first name, consistent with standard Chinese naming convention, but inconsistent with the purported contributor's ethnicity and/or national background. A summary of some of these interviews follows:

   a. On or about August 2, 2024, the FBI interviewed Victim-1, an individual whose identity is known to the affiant, about a contribution card bearing Victim-1's name, address and purported signature that was submitted by the defendant DAO YIN to the

PCFB. Victim-1 stated that Victim-1 did not complete the contribution card, the signature on the card did not belong to Victim-1 and Victim-1 never donated to YIN's campaign. Victim-1 further stated that Victim-1 never received a Good Faith Letter from YIN, despite YIN's prior representation to the PCFB that YIN mailed one to Victim-1. Additionally, the contribution card incorrectly listed Victim-1's last name before Victim-1's first name.

        b.        On or about August 5, 2024, the FBI interviewed Victim-2, an individual whose identity is known to the affiant, about the contribution card bearing Victim-2's name, address and purported signature that was submitted by the defendant DAO YIN to the PCFB. Victim-2 stated that the signature on the card did not belong to Victim-2, and Victim-2 never donated to any campaign. Victim-2 stated that Victim-2 would not have written Victim-2's last name first, as appeared on the contribution card. Additionally, Victim-2 stated that the address on the card was for a location at which Victim-2 had not lived for several years.

        c.        On or about December 22, 2024, the FBI interviewed Victim-3, an individual whose identity is known to the affiant, about a contribution card bearing Victim-3's name, address and purported signature that the defendant DAO YIN submitted to the PCFB. Victim-3 stated that the signature on the card did not belong to Victim-3 and Victim-3 was not familiar with YIN's campaign. Victim-3 stated that the card incorrectly listed Victim-3's last name before Victim-3's first name. Additionally, Victim-3 stated that the address on the card was Victim-3's correct address, but that Victim-3 had not received any mail from YIN's campaign, despite YIN's prior representation to the PCFB that he had mailed a Good Faith Letter to Victim-3.

        15.        On or about June 24, 2024, there was public news reporting about the Committee's submission of contribution cards to the PCFB with forged signatures of individuals

who had never donated to the Committee. Based on a court-authorized search of the Apple iCloud account associated with the YIN Phone, I know that on or about July 1, 2024, approximately one week after the aforementioned public news reporting, the defendant DAO YIN sent communications over the messaging application WeChat indicating that YIN had deleted his prior WeChat and text messages.

16. On or about October 29, 2024, the FBI searched the defendant DAO YIN's residence pursuant to a court-authorized search warrant. Among other items, the FBI recovered (1) several contribution cards, including those that Victim 1 through Victim 3 had previously confirmed had been fraudulently submitted to the PCFB; (2) several unmailed Good Faith Letters signed by YIN which YIN had previously claimed to the PCFB that he had mailed to contributors; and (3) Good Faith Letters that had been marked as returned to sender that had not successfully been delivered to the listed recipients. Additionally, dozens of the contribution cards recovered from YIN's residence included Google email addresses that were not included on the contribution cards when those cards were originally submitted to the PCFB. According to Google records, most of these email addresses either did not exist or belonged to a person other than the listed contributor on the card.

17. According to records maintained by Yahoo, at least two of the emails the defendant DAO YIN sent to the PCFB from the YIN Email Account in or around February and March 2024 in furtherance of the fraudulent scheme were routed through Yahoo servers in Nebraska. Because YIN's campaign and the PCFB were located in New York, I know that the emails crossed state lines. In the first email, on or about February 22, 2024, YIN claimed, in response to the PCFB's warning that certain contributions did not qualify for matching funds, that his campaign would collect additional information and submit corrections. In the second

email, on or about March 21, 2024, YIN provided a draft Good Faith Letter to the PCFB that he claimed he would provide to each contributor.

IV.     Conclusion

18.     Based on the foregoing information, I submit that there is probable cause to believe that the defendant DAO YIN, together with others, devised a scheme to defraud the PCFB and to obtain money from the Office of the New York State Comptroller through materially false and fraudulent pretenses, representations, and promises, and used interstate electronic wire communications to do so.

WHEREFORE, your deponent respectfully requests that the defendant DAO YIN be dealt with according to law.

I further request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the affidavit and arrest warrant. Based upon my training and experience, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving

the defendant an opportunity to flee from prosecution, destroy or tamper with evidence and change patterns of behavior.

_____
WILLIAM FATH
Special Agent, Federal Bureau of Investigation

*by telephone*

Sworn to before me this
11 day of June, 2025

████████████████

_____
THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK